Argued December 1, affirmed December 23, 1970

# LAKE COUNTY BOARD OF EQUALIZATION, *Appellant, v.* DEPARTMENT OF REVENUE ET AL, *Respondent.*

478 P2d 377

*Carl N. Byers*, Salem, argued the cause and filed the briefs for appellant.

*Theodore R. Conn*, Lakeview, argued the cause for respondent. With him on the briefs were Conn & Lynch, Lakeview.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

TONGUE, J.

This suit was filed in the Tax Court to reverse and modify an order by the Department of Revenue under which the assessed value of the ZX Ranch for the tax year 1968-69 was reduced from $3,405,730, as established by the Lake County Board of Equalization, to $2,364,570. The Tax Court affirmed the order of the Department of Revenue, except as modified by in-

creasing the valuation to $2,627,270. Plaintiff appeals from that order.

No appearance has been made by the Department of Revenue, but the ZX Ranch, Inc. (hereafter referred to as defendant), filed an answer and later filed a cross-appeal from the failure of the Tax Court to make any allowance for what it claims to be a statutory deduction for crops growing on the land.

Plaintiff concedes that the facts are "almost identical" to those in the prior case between the same parties reported in 3 OTR 221 (1968), in which the true cash value of the same ranch was established at $2,364,570 for the previous tax year, 1967-68.

The decision of the Tax Court that the true cash value of the ZX Ranch for the year 1968-69 was the sum of $2,627,270 was based upon its finding that the ranch had an "8,500 cow carrying capacity at $350," resulting in a total of $2,975,000, from which certain deductions were made that are not in dispute on this appeal.

In contending that the Tax Court should have established a higher value the plaintiff makes the following contentions: (1) "The 'animal unit' is a more accurate measurement of the productive capacity of cattle land than the 'cow unit'"; (2) "The correct measure of the carrying capacity of a property is the number of animal units it *can* support," rather than the number it *has* supported in past years; (3) "Mr. Kolberg's (defendant's appraiser) estimate of cost per cow unit is based on the erroneous assumption that large ownerships sell for less per unit than small ownerships"; and (4) "All the objective evidence indicates a value of $325 per animal unit and a higher value per cow unit."

### 1. *The "animal unit" versus the "cow unit."*

The "animal unit" basis (which specifically includes not only cows, but also bulls, heifers and calves) may be a more accurate basis for determining the carrying capacity of a cattle ranch than the "cow unit" basis (which is based upon the number of cows that a cattle ranch will support, without specifically counting the bulls, calves and heifers necessary for replacement cows).

Plaintiff's witnesses, however, did not contend that the "animal unit" basis is now the accepted and recognized basis for determining the carrying capacity of cattle ranches in Lake county, but only that it is "becoming an accepted method." Indeed, they did not deny the testimony of defendant's witnesses that cattle ranches in that area are bought and sold on a "cow unit" basis and that, in any event, "animal units" can be "converted" into "cow units," so that this should make no difference in the final result. The expert witnesses do not agree, however, upon the proper basis for such a "conversion."

■ Defendant's appraiser, Mr. Kolberg, testified that the ZX Ranch would support 8,500 "cow units" (as found by the Tax Court) and that this was the same as 9,750 "animal units." This would result in a "conversion factor" of 1.147, rather than a "conversion factor" of 1.222, which represented the result of the testimony of plaintiff's appraiser. The Tax Court, after observing the witnesses offered by both parties, apparently chose to believe this testimony by Mr. Kolberg.

Plaintiff contends that the testimony of its appraiser on this issue was more reliable than that of Mr. Kolberg. After examining the entire record, how-

ever, we cannot say that the Tax Court was not entitled to believe the testimony of Mr. Kolberg and we again agree with its decision on this issue.

2. *Carrying capacity as the number of animals a ranch CAN support, rather than the number supported in past years.*

The term "carrying capacity" clearly contemplates potential capacity, rather than past practice. It does not necessarily follow, however, that the number of cattle actually carried on a ranch in past years may not be more reliable evidence of its potential carrying capacity than the opinion of a single expert witness, based upon his study of the same ranch.

This is particularly true where, as in this case, plaintiff's expert witness did not have specific and detailed information relating to such important facts as the actual acreage of each of the various areas used for growing hay and the actual number of tons of hay produced, among other facts necessary as the basis for an accurate determination of potential carrying capacity.

■ It may be, as contended by plaintiff, that the Tax Court did not accept the testimony of plaintiff's witness on this issue, but chose instead to accept the testimony of defendant's witness, Mr. Kolberg, which was based on the number of animals actually carried on the ranch during past years. Again, however, this was a matter of credibility of witnesses which was for the Tax Court to determine, and we also agree with its decision on this issue.

3. *The "assumption" that large cattle ranches sell for less per cow or animal unit than small ranches.*

Defendant's principal expert witness, Mr. Kol-

berg, testified that "the major factor in consideration" in determining the true cash value of the ZX Ranch was the fact that it was a large ranch of 64,000 acres, requiring a large purchase price. Thus, he testified that there is a "very limited market" for a ranch selling for over $6,000,000 (for which the ZX Ranch had previously been sold in 1966, including livestock and equipment), while the market for smaller ranches is not subject to the same limitations since there are "more people with less money." Another witness called by defendant testified to the same effect.

Plaintiff has undertaken to demonstrate from the "comparable sales" included in the appraisal report by Mr. Kolberg that the larger ranches did not sell for a lower price per cow unit than the smaller ranches, but that "the opposite appears to be true."

It is true that two of the "comparable sales" used by Mr. Kolberg in support of his conclusion that the ZX Ranch was worth $350 per cow unit were large ranches and were sold at a higher price per cow unit. Mr. Kolberg, however, testified that, in his opinion, the two "comparable sales" of greatest significance were the previous sale of the ZX Ranch itself (which sold for an equivalent of $333 per cow unit) and the sale of the Warner Valley Ranch (which sold at an equivalent of $360 per cow unit). He also testified that since the sale of the ZX Ranch in 1966 the market for such ranches has been "stagnant," with no inflation or increase in values.

Plaintiff's expert witness, however, did not even consider the previous selling price of the same ranch, which would appear to be most significant. He did so only because of his opinion that it was the "subject property" and for that reason alone was not a "fair

example." He had no criticism of the transaction, however, as a sale made "at market" between a "willing buyer" and a "willing seller."

Plaintiff's expert also admitted that the sale of the Warner Valley Ranch represented the nearest sale (being 60 miles away, in the same county) and that it was not only comparable in size, production and carrying capacity, but was also more compact and was a "cheaper operation." He contended, however, that at a price of $360 per cow unit it was a "distress sale" at less than its true cash value, because two of the four owners were "desperate for money," although admitting that the ranch was free from debt and had operating funds in the bank. Plaintiff did not, however, deny the testimony of Mr. Kolberg that the Warner Valley Ranch had been "thoroughly exposed to the market" before it was sold.

Plaintiff's expert witness also admitted not only that "sales of comparable size and nature are limited," but that "sales data from distant areas with differing environmental conditions (requiring) numerous adjustments by the appraiser tends to increase his exposure to human error," and that differences in "soil, water, precipitation, location, elevation and production influence demand and price." This, of course, was true, in varying degrees, of most of the "comparable sales" considered by the appraisers for both parties, other than the previous sale of the ZX Ranch and the sale of the Warner Valley Ranch.

■ Thus, since the testimony of Mr. Kolberg on this issue, upon which the Tax Court apparently relied, was based primarily upon consideration of those two sales, and since the Tax Court, in its decision, made no mention of the "size factor," there is nothing

to indicate that the Tax Court was influenced by the further testimony of Mr. Kolberg that larger ranches sold for lower unit prices than smaller ranches, even if that was not an accurate statement.

4. *The objective evidence fully supports a value of $350 per cow unit.*

Plaintiff "suggests with candor and respect, that there was a strong inclination for the Tax Court to reach the same conclusion in this case that it did in the previous year," in which the court also found the carrying capacity to be 8,500 cow units at $350, resulting in a true cash value of $2,975,000, prior to deductions for equipment and other items. (See 3 OTR at 224.)

Plaintiff admits that "there had been no substantial change in circumstances," but contends that the "objective evidence," including both "comparable sales" and the actual number of animals carried on the ranch in past years requires a finding that the ranch has a carrying capacity of more than 8,500 cow units and that its true cash value is higher than the amount determined by the Tax Court and should have been determined on the basis of 10,800 animal units at $325 per unit. Plaintiff also makes "an appeal for uniformity," based upon testimony that the county assessor had re-assessed the ZX Ranch as part of a re-appraisal program and on the same basis as other ranch property in Lake county.

The evidence of "comparable sales" has already been discussed, to the effect that the previous sale of the ZX Ranch in 1966 and the sale of the Warner Valley Ranch support the finding of $350 as the true cash value of the ranch, on a "cow unit" basis, subject

to determination of its carrying capacity in "cow units." Thus, it remains to consider the determination of the Tax Court that the ZX Ranch has a carrying capacity of 8,500 "cow units."

It may be true, as contended by plaintiff, that the ranch has carried an average of 10,237 animal units per year for the past few years and that, applying a "conversion factor" of 1.147 (as used by Mr. Kolberg), a carrying capacity of 8,500 cow units would equal only 9,750 animal units, or a difference of 487 animal units. Plaintiff says that this difference would result in "another $150,000 of value."

If, however, a "conversion factor" of 1.222 were applied, as would be the result of the testimony of plaintiff's expert witness, the 8,500 cow units would be converted to 10,387 animal units, or 150 more than actually carried in past years.

There was also evidence that at the time of its sale in 1966 the ZX Ranch carried 8,566 cows, and that for the years 1966, 1967 and 1968 the average number of cows actually carried on the ranch was 8,500 cows as of January 1st of each of these years.

■ After examining the entire record we conclude that there was ample evidence to support the finding of the Tax Court that the ZX Ranch had a carrying capacity of 8,500 cow units, at $350 per unit. Thus, we agree with the finding of the Tax Court that the total true cash value of the ZX Ranch was $2,975,000 for the tax year 1968-69, prior to deductions for equipment and other items.

5. *Statutory deduction for growing crops.*

Defendant, on cross-appeal, contends that the Tax Court erred in failing to make a deduction for the

value of alfalfa and native grasses as tax exempt growing crops, under ORS 307.320.

■ The Tax Court, in its decision, held that "the evidence in this case does not justify the deduction for the grasses and alfalfa." We have examined the entire record and agree with that conclusion.

Defendant had the burden of proof on this issue because ORS 307.320 is an exemption statute. The appraisers engaged by the parties could not agree whether any such deduction is proper, particularly for native grasses, when land is appraised as an operating cattle ranch. They also could not agree upon the basis and amount of any such deduction. Moreover, the value of growing alfalfa and native grasses on this ranch would appear to be speculative and difficult to ascertain from the record in this case.

For all of these reasons, the decision and order of the Tax Court is affirmed.